UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO ROMAN VALENCIA ZAPATA, DAVID RAFAEL COLON SOLANO, KEYMARIS ALVAREZ MIRANDA, GABRIELA ALONDRA VARGAS PLASENCIA, <br><br>　　　　Petitioners, <br><br>　　v. <br><br>POLLY KAISER, et al., <br><br>　　　　Respondents. | Case No. 25-cv-07492-RFL <br><br>**ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** <br><br>Re: Dkt. No. 4 |

　　　　Before the Court is Petitioners Gerardo Roman Valencia Zapata, David Rafael Colon Solano, Keymaris Alvarez Miranda, and Gabriela Alondra Vargas Plasencia's *Ex Parte* Motion for Temporary Restraining Order. (Dkt. No. 4.) Petitioners filed their Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. On September 4, 2025, minutes after each Petitioner exited the San Francisco Immigration Courthouse after the government asked to orally dismiss their case during their respective hearings, they were detained by Immigration and Customs Enforcement

1

("ICE") agents. The evidence submitted by Petitioners indicates that the agents did not present any of them with a warrant or inform them of the reason for their arrests.

Now, Petitioners request that this Court (1) order Respondents to immediately release them from Respondents' custody without electronic monitoring and enjoin Respondents from re-detaining them absent further order of the Court; (2) in the alternative, order Respondents to immediately release them from Respondents' custody and enjoin Respondents from re-detaining them unless Respondents demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioners are flight risks or dangers to the community such that their physical custody is required; and (3) prohibit the government from transferring them out of this district and/or removing them from the country until these habeas proceedings have concluded. For the following reasons, the motion for Temporary Restraining Order is **GRANTED**, as modified below.

I. BACKGROUND

The following facts are based on the declarations submitted by Petitioners in support of the motion. Petitioners are four non-citizens, all of whom fled their home countries in South America, with pending applications for asylum, withholding of removal, and protection under the Convention Against Torture.

Petitioner Gerardo Roman Valencia Zapata is thirty-seven years old and was born in Venezuela. He came to the United States seeking asylum around the end of 2022, fleeing Venezuela after being attacked by an individual connected to the Venezuelan government. Petitioner David Rafael Colon Solano is twenty-six years old and was born in Colombia. He fled Colombia after a cartel killed his father and some of his siblings, and came to the United States seeking asylum in about 2023. Valencia Zapata and Colon Solano both presented themselves to immigration officials upon entry, and after the officials determined that they posed little, if any, risk of flight or danger to the community, they were then released on their own recognizance. They subsequently filed timely I-589 applications for asylum.

Petitioner Keymaris Alvarez Miranda is forty-one years old and was born in Venezuela. She fled Venezuela after receiving threats connected to the Venezuelan government and came to the United States seeking asylum in about 2023. The final Petitioner is Gabriela Alondra Vargas Plasencia, who is twenty-two years old and was born in Peru. She came to the United States seeking asylum in 2024, fleeing attacks and death threats in Peru. Both Alvarez Miranda and Vargas Plasencia were detained by immigration officials and released on their own recognizance after a determination that they posed little risk of flight or danger to the community. They both timely applied for asylum.

Petitioners appeared at the San Francisco Immigration Court on September 4, 2025, for master calendar hearings in their respective cases. At each of Petitioners' hearings, an attorney from the Department of Homeland Security ("DHS") moved to dismiss their case. The Immigration Judge did not grant the motions to dismiss but instead gave each Petitioner thirty days to respond to the motion, and reset their hearings for another date. Upon leaving the courtroom, each Petitioner was arrested by ICE agents and taken into custody. Petitioners all represent that they were given no reasons or explanations for their detention. According to their petition, they have no criminal history and complied with their ICE and immigration court obligations.

Petitioners filed their habeas petition on September 4, 2025. Shortly after filing the habeas petition, Petitioners' counsel provided notice of the petition and a forthcoming motion for a temporary restraining order, along with a copy of the petition, to Respondents' counsel. Later that day, Petitioners' counsel emailed Respondents' with a copy of the temporary restraining order motion and supporting documents. In their motion, Petitioners argue that their arrest and detention violate the Fifth Amendment rights to (a) substantive due process, because they were detained despite posing no risk of flight or danger to the community, and (b) procedural due process, because they were deprived of the opportunity to contest their arrests and detention before a neutral decisionmaker prior to their detention. (Dkt. No. 4-1.)

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioners' counsel has set out specific facts in a declaration showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. *See* Fed. R. Civ. Pro. 65(b)(1)(A). Additionally, counsel states that he attempted to

contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on September 4, 2025, regarding the habeas petition and motion for temporary restraining order, and provided a copy of Petitioners' habeas petition and Notice of Motion for *Ex Parte* Temporary Restraining Order by email.  (*See* Dkt. No. 4-4 at 2.)  *See also* Fed. R. Civ. P. 65(b)(1)(B).

The Court finds that Petitioners have shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in their favor.  *Weber*, 767 F.3d at 942.  Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.  *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Garcia v. Bondi*, No. 3:25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (same); *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319

(1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Petitioners be immediately released from custody, and that they be given notice and pre-detention hearings before a neutral decisionmaker prior to being taken back into custody.

Petitioners have a substantial private interest in remaining out of custody. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Even if Petitioners receive prompt post-detention bond hearings under 8 U.S.C. § 1226(a) and are released at that point, they will continue to suffer the harm that is the subject of their motion: that is, their potentially erroneous ongoing detention. *See Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) (requiring a pre-deprivation hearing and noting that respondents "misapprehend[ed] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 2499 (2001). ICE had previously determined Petitioners not to pose a risk under those criteria, and communicated no basis under those statutory purposes for arresting Petitioners. In these circumstances, the risk of erroneous deprivation appears high.

And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioners without a hearing is "low," particularly in light of the fact that Petitioners have maintained lawful presence. *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

Petitioners have also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioners face is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up). "[I]t follows inexorably from [the] conclusion" that Petitioners' detention without a pre-detention hearing is "likely unconstitutional," that they have "also carried [their] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioners' favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see also Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioners] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioners if it ultimately demonstrates, by clear and convincing evidence, that their detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854-BLF (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d

719, 727 (9th Cir. 1983). "Faced with . . . a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioners'] favor." *Singh v. Andrews*, No. 25-cv-00801, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

A TRO immediately releasing Petitioners is appropriate here to return them to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to their likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).[1]

Because Petitioners satisfy all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g., Garro Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest), converted to preliminary injunction at __ F. Supp. 3d __, 2025 WL 2084921 (N.D. Cal. July 24, 2025); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-00647, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia*, 2025 WL 1676855, at *3 (granting temporary restraining order requiring pre-detention

---

[1] Because Petitioners' release simply returns them to the status quo, it is not a mandatory injunction, which is subject to a higher standard. In any event, even if Petitioners' release were understood to be a mandatory injunction, that standard would be met. "First, unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). And second, as detailed above, the merits of the case are not "doubtful." *Id.*

8

hearing before re-detention of noncitizen out of custody six years); *Enamorado v. Kaiser*, No. 25-cv-04072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Because "there is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

## IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioners' *Ex Parte* Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioners from Respondents' custody and are **ENJOINED AND RESTRAINED** from re-detaining Petitioners for any purpose, including for the purpose of removing them from the United States, without notice and a pre-deprivation hearing before a neutral decisionmaker.[2] This Order shall remain in effect through **Friday, September 19, 2025**.

The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order **SHALL** be served on Respondents such that they receive actual notice as soon as practicable, and Petitioners shall file proof of such service by no later than **Monday, September 8, 2025**. Respondents shall provide a status report confirming Petitioners' release by **Monday, September 8, 2025**.

Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in Courtroom 15 at the San Francisco Courthouse on **Thursday, September 18, 2025, at 10:00 a.m.** why a preliminary injunction should not issue. Respondents shall file a response to

---

[2] Petitioners also ask the Court to order that they remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

9

Petitioner-Plaintiff's motion by no later than **September 11, 2025**. Any reply shall be filed by **September 16, 2025**.

    **IT IS SO ORDERED.**

Dated: September 5, 2025, at 12:07 p.m.

                                                RITA F. LIN
                                                United States District Judge